In re ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Debtor.

ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant. (Two Cases)

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Movant,

v.

ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Respondent. (Two Cases)

The COUNTY OF ERIE, Movant,

v.

ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Respondent.

The CITY OF ERIE, Movant,

v.

ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Respondent.

ERIE HILTON JOINT VENTURE, a Pennsylvania Partnership d/b/a The Quality Hotel Plaza, Movant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA and The Erie County Tax Claim Bureau, Respondents.

Bankruptcy No. 89–00571E.
Adv. Nos. 90–0033, 90–0137, 90–496, 90–1203 and 90–1513.

United States Bankruptcy Court, W.D. Pennsylvania.

March 22, 1991.

Harry D. Martin and James H. Richardson, Jr., Erie, Pa., for debtor.

Daniel L. Wessels and Neil F. Siegel, Pittsburgh, Pa., for Prudential Ins. Co. of America.

Lawrence C. Bolla and Michael S. JanJanin, Erie, Pa., for Official Committee of Unsecured Creditors.

William R. Brown, Erie, Pa., for Pennbank.

Dennis J. Spyra, Pittsburgh, Pa., for U.S. Trustee.

Ted G. Miller, Erie, Pa., for County of Erie.

Paul J. Susko, Erie, Pa., for City of Erie.

John W. Beatty, Erie, Pa., for The School Dist. for the City of Erie.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

The Erie Hilton Joint Venture ("Hilton") owned and operated a single asset, a hotel property known as the Quality Hotel Plaza in Erie, Pennsylvania (the "Property"). Prudential Insurance Company of America ("Prudential") holds a first mortgage on the Property. After Hilton's negotiations with Prudential regarding mortgage defaults failed, the Property was scheduled for sheriff's sale on October 13, 1989. Hilton filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on October 12, 1989, staying the sheriff's sale.

Dissension between Hilton and Prudential has permeated the course of this case.

On November 22, 1989, Prudential filed a Motion to Dismiss Hilton's Chapter 11 case or for Relief from Stay to enable Prudential to foreclose on the Property. In response, Hilton filed a Complaint to Determine Secured Status and a Complaint for Turnover of a Tax Escrow Account held by Prudential. Prudential subsequently withdrew its Motion to Dismiss but continued to vigorously pursue Relief from Stay.

At a trial held on February 21, 1990, it was determined that Prudential's first mortgage balance was in excess of $4,100,-000 and that Pennbank has a junior mortgage in the amount of approximately $1,100,000. The fair market value of the

Property is $2.9 million. Additionally, real estate tax liens for 1987, 1988 and 1989 exist against the Property in the approximate amount of $400,000.

Although Hilton had no equity in the Property, the court found that the Property was necessary for an effective reorganization. Hilton suggested several alternative plans that it might propose within 30 to 60 days. The court temporarily denied Prudential's Motion for Relief from Stay and granted Hilton until April 30, 1990 to file a plan of reorganization.

Hilton filed a disclosure statement and plan of reorganization on April 26, 1990. The court entered an order on April 27, 1990 denying Prudential's Motion for Relief from Stay. On May 7, 1990, Prudential filed an appeal to the District Court and on May 24, 1990, Prudential filed a Motion for Reconsideration of our April 27, 1990 order. Prudential's Motion for Reconsideration was denied as being untimely filed.

On May 7, 1990, Prudential also commenced a further Motion for Relief from Stay due to Lack of Adequate Protection. Prudential alleged that Hilton would be unable to pay its 1990 real estate taxes when they became due and that Hilton's failure to pay the 1990 taxes which were accruing at the rate of $10,000 per month would erode the value of Prudential's collateral.

Hilton responded that the pending plan of reorganization provided for payment of the 1990 real estate taxes and therefore, Prudential's collateral was not being jeopardized. The court held a hearing on May 29, 1990 and took the matter under advisement.

Prudential filed objections to Hilton's disclosure statement. Hilton then filed an Amended Disclosure Statement and Plan on June 1, 1990. The Amended Disclosure Statement was approved over Prudential's objections on June 4, 1990. A hearing on confirmation of Hilton's Amended Plan was scheduled for July 9, 1990. On June 25, 1990, Prudential's second motion for relief from stay was denied pending the confirmation hearing.

At the July 9, 1990 hearing on confirmation of Hilton's plan, the court heard argument on objections to confirmation by Prudential and the United States Trustee. An evidentiary hearing was scheduled for August 1, 1990.

On July 12, 1990, Prudential filed a Motion for Reconsideration of our order dated June 25, 1990 which denied Prudential's Motion for Relief from Stay pending the confirmation hearing. Prudential again requested that we grant relief from stay unless Hilton paid or escrowed a fund to pay the 1990 real estate taxes.

On July 31, 1990, one day before the scheduled evidentiary hearing on confirmation of Hilton's amended plan of reorganization, Hilton filed a Petition to Modify its plan.

At the confirmation hearing on August 1, 1990, after a full day of negotiating, the parties presented the court with a stipulated order. Prudential was granted relief from stay and in return agreed to waive its right to assert any deficiency claim against the bankrupt estate.

It thus appeared that Hilton had given up the battle and the parties could depart peacefully. Not so.

Neither the order granting Prudential relief from stay nor the exhibit attached to the order mention real estate tax obligations. When the order and exhibit were presented to the court on August 1, 1990, counsel for Prudential stated:

> We merely point out that the Stipulated Order and attached letter represent the entire agreement reached thus far with respect to these matters.... There are no agreements as to any other matters between Prudential and the Debtor.

*See In re Erie Hilton Joint Venture*, No. 89–00571, Transcript of hearing at 3 (Bankr.W.D.Pa. August 1, 1990). Hilton's counsel agreed that this statement was correct. *Id.*

Subsequently on August 23, 1990, Hilton filed a Second Amended Plan of Reorganization incorporating its prior plan by reference with certain changes. The Second Amended Plan provides that Hilton's limit-

ed partners will infuse cash to pay a lump sum dividend to all remaining creditors and, further, provides that Hilton will acquire a different hotel property so that Hilton can effect a "like-kind" exchange under § 1031 of the Internal Revenue Code, to preserve certain tax benefits for Hilton's limited partners.

The City of Erie, The County of Erie and The School District of the City of Erie (collectively, "the Taxing Authorities") as well as Prudential filed objections to Hilton's Second Amended Plan. The objections raised the issue of responsibility for payment of the 1990 real estate taxes.

Prudential asserts that the 1990 real estate taxes are not liens against the Property and, therefore, Prudential has no liability.

The Taxing Authorities object to confirmation of the Second Amended Plan as the Plan provides that no payment will be made for 1990 real estate taxes because Prudential would pay the 1990 taxes at foreclosure sale while at the same time, Prudential indicates that the 1990 real estate taxes are Hilton's responsibility. The Taxing Authorities assert that unless the 1990 real estate taxes are paid by Prudential, full payment of the taxes should be provided for in the Second Amended Plan as administrative expenses.

Hilton asserts that the 1990 real estate taxes are solely the responsibility of Prudential because:

1) Prudential agreed to pay all real estate tax claims during the negotiations which resulted in Prudential being granted relief from stay on August 1, 1990;

2) Prudential waived all claims against the Hilton estate on August 1, 1990;

3) The 1990 real estate taxes became liens against the Property when Prudential was granted relief from stay on August 1, 1990;

4) The 1990 real estate tax obligation must be assessed against Prudential pursuant to Bankruptcy Code § 506(c).

Finally, Hilton states that if Prudential is not liable for the 1990 real estate taxes, then the 1990 real estate taxes would be deemed Class 1 administrative expenses under the Second Amended Plan.

Hilton advised the court that the success of its Plan (the Internal Revenue Code § 1031 "like-kind exchange") depended upon plan confirmation prior to Prudential's scheduled sheriff sale of the Property on October 12, 1990. The court held a status conference on September 5, 1990 at which counsel expressed their views on responsibility for the 1990 real estate taxes. A continued confirmation hearing was held on October 3, 1990 after which the court entered an order confirming the Second Amended Plan with the proviso "that any and all provisions of such Plan which fix liability for 1990 ad valorem real estate taxes are void, and all questions relating to the 1990 ad valorem real estate taxes are reserved to a future determination."

Two days later, on October 5, 1990, Prudential filed an Emergency Motion requesting an order providing that no proceeds from the sale of the Property at sheriff's sale on October 12, 1990 be used to satisfy the 1990 real estate tax claims. Responses were filed by the County of Erie and Hilton on October 9, 1990.

The County of Erie asserted that Prudential was responsible for payment of the 1990 real estate taxes because:

... (a) If the County did not obtain an in rem tax lien no later than January 1, 1990, it did obtain such tax lien by operation of law no later than August 1, 1990 pursuant to 53 P.S. 7102 when this Court granted Prudential relief from stay with regard to the Debtor's property;

(b) Prudential's pre-bankruptcy foreclosure proceeding vested the Court of Common Pleas of Erie County, Pennsylvania with constructive possession of the Debtor's mortgaged property and this Court's relief from stay order of August 1, 1990 returned constructive possession of the same to the Common Pleas Court allowing the County's in rem tax lien to become secured no later than August 1, 1990; *Matter of Roloff,* 598 F.2d 783 (3rd Cir., 1979); *In re Stahl,* 5 B.R. 148 (1980); *In re Lally,* 51 B.R. 204, 206 (1985).

(c) The County obtained an in rem first priority tax lien no later than October 3, 1990 when this Court confirmed the Debtor's second amended plan of reorganization and thus the Debtor's property no longer was property of the bankrupt estate under Section 362(c)(1), *In re Korgan,* 52 B.R. 557 (1985); *In re Fortner Oilfield Services,* 49 B.R. 9 (1984);

(d) The County obtained a first priority secured lien for its 1990 taxes no later than October 3, 1990 upon this Court's entry of its confirmation Order.

(e) The County's first lien under 53 P.S. 7102 and 72 P.S. 5860.301 is an in rem lien and thus would attach to the subject property at the time the Sheriff sold said property to Prudential or another purchaser on October 12, 1990, because no later than said sale this property would leave the Debtor's estate. *In re Berry,* 11 B.R. 886 (1981).

Hilton responded that this court lacked jurisdiction; that if we did have jurisdiction, we did not have authority to order the Sheriff of Erie County ("Sheriff") to issue a deed prior to the time the Erie County Sheriff received payment of and authority to distribute the 1990 real estate taxes and further asserted that Prudential was not entitled to the relief requested as a matter of law.

To avoid delay of the pending October 12, 1990 sheriff's sale, the court entered an order on October 10, 1990 which granted the Taxing Authorities relief from stay to impose, or attempt to impose, liens on the Property for 1990 real estate taxes. The court further granted the Sheriff permission to collect costs and taxes upon the sale of the Property, but precluded the Sheriff from making any distribution of the monies, except upon further order of this court.

The Court also entered an order on October 10, 1990 finding that Hilton operated the Property from January 1, 1990 through August 1, 1990 when Prudential was granted relief from stay and ordered Hilton to pay 7/12 of the 1990 real estate taxes as a priority administrative expense. Further, the court determined that the party pur-chasing the Property at the sheriff's sale on October 12, 1990 would bear responsibility for the 1990 real estate taxes for the period from October 12 through December 31, 1990.

The court determined that it had insufficient evidence to enable the court to make a determination as to whether the Property benefitted from taxes for the period from August 1 through October 12 and whether such portion of the 1990 taxes were for the benefit of Hilton or for the benefit of Prudential. The court scheduled an evidentiary hearing for October 30, 1990.

On October 19, 1990 Hilton filed a Motion for Reconsideration of the October 10, 1990 order assessing the estate taxes for the period from January 1, 1990 through August 1, 1990 against Hilton as an administrative expense stating that an evidentiary hearing was necessary before that determination could be made. Of course, Prudential opposed the Motion stating that the October 10, 1990 order was correct and that Hilton had shown no grounds for reconsideration. This was followed on October 22 and 29, 1990 by the County of Erie's and the City of Erie's Motions for Allowance of the 1990 taxes as an administrative expense.

On October 25, 1990, Prudential filed a Motion to Compel Recovery of Funds and for Creation of Escrow Account. Prudential asserted that the October 3, 1990 order confirming the plan was interlocutory and not final since liability for the 1990 real property taxes was left undetermined. Therefore, since the confirmed plan provides that payments to administrative claimants shall not be made until the "Effective Date" and since the "Effective Date" is "the date on which the order confirming the Plan becomes final and not appealable," certain payments made by Hilton under the confirmed plan are unauthorized. Prudential wants Hilton to recover the payments and have the funds placed in an escrow account supervised by this court.

The court held a hearing on October 30, 1990. Evidence was presented as to responsibility for the portion of the 1990 real

estate taxes allocable to the period from August 1, 1990 through October 12, 1990.

The court agreed to reconsider its October 10, 1990 order assessing $7/12$ths of the 1990 real estate tax liability to Hilton, and set November 19, 1990 for trial to allow the parties to complete the record on whether or not Prudential had agreed with Hilton to pay the 1990 real estate taxes.

Finally, on December 12, 1990, this court entered an order permitting the Sheriff to disburse funds for the 1987, 1988 and 1989 real estate taxes. Prudential previously acknowledged that the Taxing Authorities had valid liens against the Property for those periods. The Sheriff continues to hold funds for the payment of the 1990 real estate taxes.

Hilton filed objections to the claims of the Erie County Tax Claim Bureau and Prudential on November 16, 1990. At a hearing held on January 16, 1991, the parties agreed that resolution of the responsibility for the 1990 real estate taxes would also resolve these claims.

Hilton filed a Complaint for Turnover against Prudential for sums allegedly due for consumable inventory at the time Prudential took possession of the Property and for an agreement to rent Hilton's liquor license until it could be transferred to Prudential. Prudential's responsive pleading denies the amounts due. However, counsel indicated that this issue could be resolved between the parties when responsibility for the 1990 real estate taxes is determined.

Prudential has advised the court that it has received certain payments on accounts receivable which were created prior to October 12, 1990 and seeks direction from the court on how to best handle those payments.

### Issues

1. Whether this court has jurisdiction to determine responsibility for payment of the 1990 real estate taxes.

2. Whether Prudential agreed to pay the 1990 real estate taxes, either by express agreement or by waiver of its right to assert a claim against the estate.

3. Whether the 1990 real estate taxes became liens against the Property.

4. Whether the 1990 real estate taxes are an administrative expense of Hilton or whether the 1990 real estate taxes shall be assessed against Prudential under § 506(c) of the Bankruptcy Code.

5. Whether Hilton is entitled to the return of the tax escrow account held by Prudential.

6. Whether Hilton shall be required to recover funds paid to creditors pursuant to its plan of reorganization.

7. Whether the Erie County Tax Claim Bureau and Prudential have valid proofs of claim against Hilton.

8. Whether Hilton is entitled to turnover of sums from Prudential for consumable inventory, for rental of Hilton's liquor license, and for accounts receivable.

### Discussion

### Jurisdiction

█ The issue of our jurisdiction was raised by Hilton in response to Prudential's Emergency Motion Concerning Debtor's 1990 Real Estate Tax Obligations. Prudential sought an order providing that until this court rules otherwise, no proceeds from the October 12, 1990 sheriff's sale of the Property are to be used to satisfy the 1990 real estate taxes.

Hilton asserts that this matter was between the Sheriff and Prudential and that we lacked jurisdiction.

Hilton apparently overlooks the fact that, in confirming its Second Amended Plan of Reorganization on October 3, 1990, we specifically reserved determination of responsibility for payment of the 1990 real estate taxes for a later date.

We find that all of the matters involved herein concern the administration of the estate and involve the allowance or disallowance of claims against the estate and, thus, are core matters under our jurisdiction within the meaning of 28 U.S.C. § 157(b)(2). This Opinion constitutes the court's findings of fact and conclusions of law.

*Prudential's Agreement to Pay 1990 Real Estate Taxes and Prudential's Waiver of its Right to a Claim Against Hilton for 1990 Real Estate Taxes*

■ Hilton asserts that on August 1, 1990, in exchange for relief from stay, Prudential agreed to pay the 1990 real estate taxes and waived all claims it might have against Hilton.

After a review of the record and having held an evidentiary hearing, we find that Hilton's position is without merit.

Hilton's initial Plan of Reorganization and First Amended Plan of Reorganization both provided for full payment of the 1990 real estate taxes. Hilton's Second Amended Plan, however, did not provide for payment of the real estate taxes, asserting that Prudential would pay all real estate taxes at the sheriff's sale of the Property.

On August 1, 1990, Hilton and Prudential submitted a stipulated order to the court which granted Prudential relief from stay and in return, Prudential waived its right to any deficiency claim against the estate. The stipulated order, approved by the court, made no mention of the real estate taxes. The court transcript of the August 1, 1990 hearing reflects that the stipulated order encompassed the entire agreement of the parties and that there were no further agreements.

Prudential's objection to Hilton's disclosure statement for its Second Amended Plan based on the plan's failure to provide for payment of the 1990 real estate taxes surprised Hilton, as was clear in the reaction of Hilton's counsel at the disclosure statement hearing held on September 5, 1990. Hilton's counsel indicated they would have to examine the August 1, 1990 stipulation with Prudential—indicating their belief that payment of the taxes was covered in the stipulation and that Prudential had agreed to pay the 1990 real estate taxes.

Despite the fact that the stipulation made no mention of real estate taxes, Hilton insisted that it could prove Prudential's agreement to pay the 1990 real estate taxes at an evidentiary hearing. An evidentiary hearing concerning the agreement of Prudential to pay the 1990 real estate taxes was held on November 19, 1990.

Evidence adduced at trial makes no showing of any agreement by Prudential to pay the 1990 real estate taxes. The evidence indicates an assumption by Hilton's counsel that Prudential would pay and an assumption by Prudential's counsel that Hilton would pay. However, there is no evidence that real estate taxes were ever discussed on August 1, 1990 or at any other time and the Stipulation is clear that Prudential made no agreements other than to waive its deficiency claim in exchange for being granted relief from stay.

We thus find that Prudential made no agreement to pay the 1990 real estate taxes and further find that Prudential did not waive its right to assert a claim against the estate for items other than its deficiency claim.

*Were the 1990 Real Estate Taxes Liens on the Property at the Time of Sheriff's Sale?*

■ The automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, prevent the creation of a lien against property of the debtor for postpetition real estate taxes while the stay is in effect. *Makoroff v. City of Lockport*, 916 F.2d 890 (3d Cir. 1990); *Equibank N/A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80 (3d Cir. 1989).

11 U.S.C. § 362(c) provides that the automatic stay:

(1) ... continues until such property is no longer property of the estate; and

(2) the stay ... continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case ... [is] a case under chapter ... 11 ... the time a discharge is granted or denied.

There are various times at which the Taxing Authorities assert that the Property was "no longer property of the estate" and therefore the Taxing Authorities were no longer subject to the automatic stay and that their lien for 1990 real estate taxes

attached. We need address only one—Confirmation of Hilton's Second Amended Plan of Reorganization on October 3, 1990.

11 U.S.C. § 1141(b) provides that:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

■ Even though foreclosure proceedings were pending, upon confirmation of Hilton's Second Amended Plan, legal title to the Property vested in Hilton, the reorganized debtor. The Property left the bankruptcy estate. The order confirming the plan served as a grant of discharge. 11 U.S.C. § 1141(d). Therefore, under § 362(c), the automatic stay which had prevented the Taxing Authorities' liens for 1990 real estate taxes from attaching to the Property no longer remained in effect.

■ We must next examine Pennsylvania State Law to determine when and if the liens attached to the Property.

53 P.S. § 7102 provides:

All taxes which may hereafter be lawfully imposed and assessed by counties, institution districts, cities, boroughs, towns, townships, and school districts on real property, are hereby declared to be a first lien on such real property (but subordinate to the lien of taxes imposed by the Commonwealth), and every such lien shall date from the day on which the millage or tax rate is fixed by the proper authority of any such political subdivision, except where such taxes are imposed and assessed prior to the commencement of the fiscal year for which the same are imposed or assessed, in which case the lien of such taxes shall date from the first day of the fiscal year for which such taxes are imposed or assessed.

But for the automatic stay of § 362 of the Bankruptcy Code, the 1990 real estate taxes would have automatically become liens against the Property, all well before October 3, 1990. Once the automatic stay terminated when the Property was no longer property of the estate, which occurred not later than confirmation of Hilton's Second Amended Plan of Reorganization, the lien for taxes automatically came into effect (October 3, 1990).

■ Therefore, the Sheriff was required to collect the 1990 real estate taxes from the purchaser, Prudential, at the time of sheriff's sale. 53 P.S. §§ 7104, 7105.

Having determined that the Sheriff properly collected the taxes, the Sheriff will be directed to distribute the taxes to the Taxing Authorities. The Taxing Authorities will receive payment of the 1990 real estate taxes in full. Consequently, the City of Erie's and the County of Erie's Motions for Allowance of the 1990 taxes as an administrative expense will be denied.

### Whether Prudential may Recover the Taxes Paid from Hilton

When a debtor files its bankruptcy petition, the automatic stay of § 362 prevents taxing authorities from asserting liens against the property in order to insure or compel payment of postpetition taxes. *Makoroff v. City of Lockport,* 916 F.2d 890 (3d Cir.1990).

■ Postpetition real estate taxes are generally treated as an administrative expense of the debtor and allowed as a first distribution priority. *In re Trowbridge,* 74 B.R. 484 (Bankr.E.D.Pa.1987).

The underlying rationale is that the debtor, on behalf of the estate, has control of the real property, postpetition, and that the property has received all of the benefits and services provided by local government, for which local property taxes are intended as some recompense. *Id.*

In the matter before us, Prudential paid the 1990 real estate taxes at the sheriff's sale. We have determined that Prudential's payment of the taxes was proper, because the taxes had become a lien against the Property prior to the time of the sheriff's sale.

However, the lien only came into effect after Hilton gave up its battle with Prudential.

Hilton had exclusive control and use of the Property from the time the case was

filed until Prudential was granted relief from stay on August 1, 1990. Until that time, Hilton continued to operate the business and proposed two plans of reorganization, both of which provided for full payment of the 1990 real estate taxes.

During this period of time, Prudential fervently fought Hilton's efforts and continually sought relief from stay.

Hilton's second motion for relief from stay specifically addressed Hilton's failure to pay postpetition real estate taxes, which Prudential claimed was detrimental to its secured position. Hilton responded that the taxes would be paid in full under the plan and asserted that there was no harm to Prudential.

At a hearing held July 9, 1990, the court advised the parties of its position that "the postpetition portion of the taxes may well be an unsecured claim, but it's also an administrative claim ... which would have to be paid in full at confirmation."

The court recognized that the taxes were accruing, but denied Prudential's Motion for Relief from Stay for lack of adequate protection as Hilton continued to assert it could deliver a viable plan of reorganization providing for full payment of the 1990 real estate taxes.

It was not until August 1, 1990 that Hilton acquiesced in granting Prudential's relief from stay and not until Hilton's Second Amended Plan of Reorganization was filed was anyone aware that Hilton would not be paying the 1990 real estate taxes as a postpetition administrative expense.

■ As previously stated, Prudential never agreed to pay the 1990 real estate taxes. It would now be a inherently unfair to require Prudential to pay the taxes for the period of time for which Hilton operated the Property solely for its benefit and while Prudential was excluded from possession.

Hilton remained in possession of the Property, operated its business and attempted to reorganize until August 1, 1990 during which time Hilton enjoyed the benefit of the municipal services which are provided by payment of real estate taxes.

Therefore, as we held in our Order of October 10, 1990 and reaffirm now, Hilton has incurred an administrative expense in the amount of 7/12ths of the 1990 real estate taxes and penalties, that is, for the period from January 1, 1990 to August 1, 1990. That amount shall be paid by Hilton to Prudential as a priority administrative expense under its confirmed plan of reorganization. Hilton also must bear responsibility for, as an administrative expense, that portion of the water, sewer and fire line charges collected by the Sheriff, which are allocable to the period prior to August 1, 1990.

■ As determined on October 10, 1990, the 1990 real estate taxes and penalties allocable to the period from October 12, 1990 until December 31, 1990 are the responsibility of Prudential since, as purchaser of the Property at sheriff's sale on October 12, 1990, it became the legal and equitable owner of the Property and enjoyed the benefit of the municipal services during that period of time.

An evidentiary hearing was held on October 30, 1990 to determine who received the benefit of operating the Property for the period August 1, 1990 through October 12, 1990.

Hilton offered Prudential possession of the Property on August 1, 1990 when Prudential was granted relief from stay. Prudential chose not to take possession until after the sheriff's sale.

As a result, Hilton, with Prudential's management team on site, kept the Property in operation until Prudential took full control of the Property on October 13, 1990.

§ 506(c) of the Bankruptcy Code provides that the debtor may recover from a secured party "the reasonable, necessary costs and expenses of preserving ... such property to the extent of any benefit to the holder of such claim."

■ Preservation of the going concern value of the business can constitute a benefit to the secured creditor. *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986).

■ After August 1, 1990, Hilton maintained operation of the Property to provide an orderly transition to Prudential when Prudential chose to commence its operation. Hilton prevented interruption in the business operations and the resultant loss of customer base. Hilton continued to accept advance reservations for rooms and bookings for banquets and parties for the benefit of Prudential. Evidence adduced at trial indicated that the Property operated at essentially break-even for this period and that Hilton derived no benefit from the operation.

Prudential received the benefit from the continued operation through October 12, 1990 and thus received the benefit of the municipal services provided for by the payment of real estate taxes. Prudential will be responsible for the payment of that portion of the 1990 real estate taxes, penalties, water, sewer and fire line charges attributable to the period from August 1, 1990 through October 12, 1990 pursuant to § 506(c) of the Bankruptcy Code.

### Tax Escrow

■ Hilton seeks turnover of the amount held by Prudential in a tax escrow account. The amounts held were paid in 1988 and escrowed for the payment of 1989 taxes.

The funds transferred to Prudential were thus earmarked for a particular purpose—to pay the 1989 real estate taxes. At the time of Hilton's bankruptcy, the funds were not available for use in Hilton's day-to-day operations.

Prudential is entitled to use the funds for their intended purpose. *See In re H.L. Murry Drilling Co.,* 121 B.R. 485 (Bankr. W.D.Pa.1990). Hilton's Motion for Turnover will be denied.

### Recovery of Funds Paid by Hilton Pursuant to Confirmed Plan

Prudential seeks an order requiring Hilton to recover funds it expended pursuant to its confirmed plan of reorganization on the basis that Hilton's 1990 real estate taxes are priority administrative expenses that must be paid before other creditors.

The court assumes that resolution of the tax issue herein will result in Hilton's payment, forthwith, of its administrative claim to Prudential. The court will, therefore, dismiss Prudential's motion to compel recovery of funds without prejudice, with a rehearing to be held upon request, should Hilton fail to promptly pay the administrative claim.

### Objections to Claims

Hilton objects to claims 3, 26 and 37 filed by the Erie County Tax Claim Bureau for unpaid real estate taxes for the years 1987 through 1990. The court previously ordered the Sheriff to release funds to pay the 1987 through 1989 real estate taxes and by an order to accompany this opinion, the Sheriff will be directed to release funds to pay the 1990 real estate taxes. Therefore, the court will sustain Hilton's objections to claims 3, 26 and 37. The Erie County Tax Claim Bureau may request a rehearing within 30 days if it has not received payment of its claims in full.

Hilton objects to the claim of Prudential, asserting that Prudential waived all claims against Hilton. As we previously determined, Prudential waived only its right to any unsecured deficiency claim and not to any other claims it might have against Hilton.

Prudential will be allowed an administrative priority claim for $7/12$ths of the amount of the 1990 real estate taxes, related penalties, and water, sewer and fire line charges applicable to the period prior to August 1, 1990.

### Turnover of Sums Due for Consumable Inventory and for Rental of Liquor License

Hilton asserts that Prudential has failed to turn over sums owed to Hilton for consumable inventory and for the rental of Hilton's liquor license while a transfer by the Liquor Control Board was pending.

Counsel for Prudential advised the court that this matter could be resolved once responsibility for the 1990 real estate taxes had been determined.

This opinion having determined responsibility for the 1990 real estate taxes, counsel for Hilton shall advise the court within 30 days whether a scheduling order or further hearings are required, in default of which Hilton's Motion for Turnover will be dismissed.

We assume that this determination will also enable the parties to resolve the disposition of accounts receivable payments received by Prudential.

An appropriate order will be entered.

### ORDER

This 22 day of March, 1991, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. Erie Hilton Joint Venture's Complaint to Compel Turnover of Property, relating to the tax escrow fund held by Prudential Insurance Company of America is DENIED.

2. Prudential Insurance Company of America's Emergency Motion to Compel Recovery of Funds and for Creation of Escrow Account is dismissed without prejudice, with a rehearing to be held upon request.

3. The Sheriff of Erie County is directed to release funds held for payment of the 1990 real estate taxes to the Erie County Tax Claim Bureau.

4. The County of Erie and the City of Erie's Motions for Allowance of 1990 Taxes as an Administrative Expense are DENIED.

5. The Erie Hilton Joint Venture's objection to claim numbers 3, 26 and 37 is SUSTAINED.

6. The Erie Hilton Joint Venture's objection to the claim of Prudential Insurance Company of America is OVERRULED. Prudential Insurance Company of America shall have an administrative priority claim for an amount equal to $7/12$ths of the 1990 real estate taxes and related penalties and for water, sewer and fire line charges allocable to the period prior to August 1, 1990.

7. The Erie Hilton Joint Venture shall advise the court, within 30 days, whether a scheduling order or further hearings are required on its Complaint for Turnover of Property and/or to Avoid Preference, in default of which the Adversary Proceeding will be dismissed.