**UNITED JERSEY BANK**

v.

**Mitchell W. MILLER, Esq.; the City of Philadelphia; the United States of America; Healthcare Services Group; Perloff Brothers, Inc.; Diane Vendetti; the School District of Philadelphia; Dr. Nicholas Canuso; Dr. Raymond Silk; and Dr. Euqene Spitz.**

Civ. A. No. 93–3065.
Bankruptcy No. 88–12842S.
Adv. No. 92–1107.

United States District Court,
E.D. Pennsylvania.

Sept. 10, 1993.

Pace Reich, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for debtor.

William F. Sweeney, Schubert, Bellwoar, Mallon & Walheim, Philadelphia, PA, John J. Francis, Shanley & Fisher, Morristown, NJ, for appellant United Jersey Bank.

Joseph Di Guiseppe, City Sol., Law Dept., Philadelphia, PA, for defendants City of Philadelphia and School Dist. of Philadelphia.

Healthcare Services Group, pro se.

Perloff Bros., Inc., pro se.

Diane Vendetti, pro se.

Nicholas Canuso, Dr., pro se.

Marc J. Zucker, Mann, Ungar & Spector, Philadelphia, PA, for defendant Dr. Raymond Silk.

Eugene Spitz, Dr., pro se.

Carol C. Priest, U.S. Dept. of Justice, Washington, DC, for interested party USA–IRS.

Edward J. Di Donato, Ciardi, Fishbone & Di Donato, Philadelphia, PA, for trustee Mitchell W. Miller.

Frederic Baker, Asst. U.S. Trustee, pro se.

### *MEMORANDUM ORDER*

CLIFFORD SCOTT GREEN, Senior District Judge.

This appeal by United Jersey Bank (UJB) of the April 22, 1993 Order of Bankruptcy Court presents the question whether the City of Philadelphia (the City) can, pursuant to 11 U.S.C. § 506(c), recover its claim for post-petition real estate taxes and water and sewer rents, assessed against real property which secures UJB's secured claim, as a surcharge of the proceeds of a proposed sale of said property? This Court has jurisdiction over this matter pursuant

to 28 U.S.C. § 158(a).[1] For the reasons which follow, I will affirm the Order of the Bankruptcy Court.

CS Associates (Debtor) owned and operated a skilled care nursing home at 747–51 South Broad Street in Philadelphia (facility) and did business thereat as University Nursing and Rehabilitation Center. Bonds were issued to finance the construction of the facility; and, through the operation of a Trust Indenture Agreement, UJB was assigned a first priority mortgage on the facility in order to assure repayment of those bonds. Thus, UJB became a secured creditor of Debtor. The current debt owed to UJB by Debtor is $3,367,037.47, plus interest and fees.

On August 15, 1988, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, Debtor failed to provide adequate services to its patients and, on October 28, 1988, the facility was closed by the Department of Health of the Commonwealth of Pennsylvania. Debtor's unsecured creditor's committee presented a Plan of Reorganization which was based upon a sale of the facility; however, as the Bankruptcy Court stated, "this effort failed because the Facility was severely vandalized in December, 1989, prior to confirmation of the plan." *United Jersey Bank v. CS Associates*, 121 B.R. 942, 945 (Bankr.E.D.Pa.1990). Therefore, on April 18, 1990, the Bankruptcy Court converted Debtor's Chapter 11 petition into a Chapter 7 petition.

During the pendency of Debtor's Chapter 7 petition, the City filed two proofs of claim for post-petition administrative Real Estate Taxes and Water/Sewer Rents, totalling $548,706.80, assessed against the facility. The City also filed a proof of claim for pre-petition Real Estate Taxes and Water and Sewer Rents, totalling $48,803.46, which by virtue of state law had properly become liens against the facility.

By Order, dated November, 10, 1992, the Bankruptcy Court approved the sale of the facility, free and clear of all liens and encumbrances, for $2,416,000.00. On November 11, 1992, UJB filed this adversary action with the Bankruptcy Court to predetermine the extent, validity, and respective priority of any and all liens on the facility and, thus, on the proceeds of the approved sale. Shortly thereafter, UJB filed a motion for summary judgment on its complaint. The City responded and asserted that its pre-petition and post-petition real estate taxes and water and sewer rents have priority over UJB's secured claim.

The Bankruptcy Court held that the City's pre-petition liens had priority over UJB's secured claim as to the sale proceeds. *United Jersey Bank v. Miller (In re C.S. Associates d/b/a University Nursing & Rehabilitation Center)*, Ch. 7 Case No. 88–12842S, Adv. No. 92–1107S, 1993 WL 18339, at *2 (Bankr.E.D.Pa. Jan. 20th, 1993). However, the court also held that the City's post-petition liens did not have priority over UJB's secured claim as to the sale proceeds. *Id.* at *3. Nonetheless, the court indicated that the City might be able to recover its post-petition liens from the sale proceeds pursuant to either 11 U.S.C. § 503(b)(1)(B)(i) or 11 U.S.C. § 506(c). *Id.*

Accordingly, on March 12, 1993, the City moved the Bankruptcy Court, pursuant to 11 U.S.C. § 506(c), to surcharge the sale proceeds and allow the City to recover its post-petition real estate tax claims and its water and sewer rent claims. In the disputed April 22, 1993 Order, the court granted the City's motion for surcharge. *United Jersey Bank v. Miller*, Ch. 7 Case No. 88–12842S, Adv. No. 92–1107S, slip op. at 6 (Bankr.E.D.Pa. Apr. 22nd, 1993).

▆▆▆▆ Parties "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such proper-

---

1. When reviewing a Bankruptcy Court decision, the district court acts as an appellate court. Bankr.Rule 8013 (1984). Findings of fact will not be set aside unless clearly erroneous. *U.S. and I.R.S. v. Owens*, 84 B.R. 361 (E.D.Pa.1988).

This Court shall judge factual conclusions by the "clearly erroneous" standard, however, conclusions of law should be given plenary and de novo review. *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).

ty to the extent of any benefit to the holder of such claim."[2] 11 U.S.C. § 506(c). To recover these expenses under § 506(c), a claimant must demonstrate that the expenditures were reasonable and necessary to the preservation and/or disposition of the property and that the expenditures benefitted the secured creditors. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corporation,* 884 F.2d 80, 84 (3d Cir.1989); *In re McKeesport Steel Castings Company,* 799 F.2d 91, 93–95 (3d Cir.1986). Clearly then, the touchstones to recovery are reasonableness, necessity to preservation and/or disposition of secured property, and benefit to secured parties.

 In the instant action, in holding that the City shall be allowed to recover the taxes and rents from the proceeds of the sale of the secured property, the Bankruptcy Court stated that:

> The City's taxes and water and sewer rents are costs which necessarily accrued against the Property during the period that it was marketed for sale. As a result of this marketing, the Property has been sold for an amount which will result in payment of certain net proceeds to UJB. These facts alone establish that UJB was conferred with a benefit by the delays effected by the sale process, which also caused the taxes to accrue. Hence, UJB received a direct benefit from the sale of the Property, which necessarily resulted in the accrual of these taxes and water and sewer rents while the Property was marketed, and is obliged to compensate the City for same out of the net sale proceeds payable to it.

*United Jersey Bank v. Miller, supra,* at 2. This statement constituted the whole of the Bankruptcy Court's findings of facts and conclusions of law on this issue.

In essence, the Bankruptcy Court found that the facility was up for sale, a sale was approved, UJB will benefit from the sale by receiving the proceeds therefrom, and during the period for which the facility was up for sale, the taxes and rents necessarily accrued. Thus, the Bankruptcy Court concluded that the taxes and rents were necessary costs of preserving and disposing of the property from which UJB benefitted because the marketing of the property while the taxes and rents accrued was a benefit to the property and to the secured creditor.

 As a general proposition, post-petition real estate taxes are administrative expenses of the estate and, therefore, recoverable, with priority, under 11 U.S.C. § 503(b)(1)(B)(i). *See, e.g., In re Erie Hilton Joint Venture,* 125 B.R. 140, 148 (Bankr.W.D.Pa.1991); *In re Trowbridge,* 74 B.R. 484, 485 (Bankr.E.D.Pa.1987); *see also Equibank, supra,* at 86 (post-petition real property taxes arguably administrative expenses) (citing *In re Trowbridge, supra* ). However, *Equibank* intimates that such taxes may be surcharged pursuant to § 506(c) when the taxes are reasonable, necessary to the preservation or disposition of the property, and of benefit to the secured party. *Equibank, supra,* at 86.

In the instant case, the fact of the accrual of the taxes over the period during which the property was marketed is not open to dispute, nor is the reasonableness of the amount of taxes as assessed pursuant to Pennsylvania statute. Further, the Bankruptcy Court's determination that the fact of the accrual of taxes while the marketing of the property took place was a benefit to the secured creditor represents a permissible inference for the court to have drawn and is supported by the record of the proceedings.

Accordingly, this 9th day of September, 1993, IT IS ORDERED that the Order of the Bankruptcy Court BE and IS HEREBY AFFIRMED and that the Appeal of United Jersey Bank is DISMISSED.

---

**2.** Although the Bankruptcy Code specifically states "the trustee may recover . . .," the Third Circuit has held that an individual creditor who has a colorable claim for expenses and who may be the only creditor with reason to pursue that claim has standing to pursue the claim notwithstanding the explicit language of the Code. *In re McKeesport Steel Castings Company,* 799 F.2d 91, 93–94 (3d Cir.1986).