In re **SCRANTON ELECTRONICS, INC.,** (jointly administered with Yardley Group, Inc. and Micro–Technology Co., t/a Micro–Products Engineering, Co.), **Debtor.**

**NEW BRUNSWICK SAVINGS BANK, Plaintiff,**

v.

**SCRANTON ELECTRONICS, INC.,** (jointly administered with Yardley Group, Inc. and Micro–Technology Co, t/a Micro–Products Engineering, Co.), **Defendant.**

**Bankruptcy No. 5–90–00538.**
**Adv. No. 5–93–0033.**

United States Bankruptcy Court, M.D. Pennsylvania.

Jan. 6, 1994.

Steven Roth, Wilkes–Barre, PA, for plaintiff New Brunswick Sav. Bank.

Ronald V. Santora, Wilkes–Barre, PA, for debtor/defendant.

Harry T. Coleman, Scranton, PA, for party in interest Scranton School Dist.

Joan Lednovich–Guari, Scranton, PA, for party in interest City of Scranton.

James Scanlon, Scranton, PA, for party in interest Lackawanna County Tax Claim Bureau.

George Clark, Scranton, PA, Trustee.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

New Brunswick Savings Bank, (hereinafter "Bank"), has filed a Motion requesting this Court to issue an Order directing that certain monies held in an escrow account be paid over to it.

The escrow account was created as a result of the efforts of the Chapter Seven Trustee in this case in selling property free and clear of liens. According to the settlement sheet attached to the Motion and identified as Exhibit "E", of the sales price of One Hundred Five Thousand Dollars ($105,000.00), the sum of Eight Thousand Two Hundred Twenty–Four and 90/100 Dollars ($8,224.90) was set aside for deposit into an escrow account which escrow account represented assessments due for sewage obligations, a sewer lien, and 1991 and 1992 real estate taxes.

The Bank, asserting that it is a lienholder in the real estate, alleges that any assessment for sewage or taxes for the years 1991 and 1992 must have occurred post-petition and any attempt to create liens by reason of those obligations is void as a violation of the automatic stay under 11 U.S.C. § 362.

The Bank concludes that any indebtedness owing for sewage use or taxes is therefore a post-petition indebtedness and, at best, an administrative claim against the general assets of the estate.

The Respondents to this Motion, the City of Scranton and the Scranton School District as well as the Lackawanna County Tax Claim Bureau, allege that they are entitled to the proceeds of the escrow account. In support of that argument, the taxing entity advances that this fund should be payable to them by reason of its status as a Section 503(b)(1)(B)(i) administrative creditor or under Section 506(c) of the Bankruptcy Code.

■ Since it is admitted that the escrowed fund is encumbered by a lien in favor of the Bank, and, normally, the general expenses of administration are payable only out of unencumbered funds, we conclude that the only manner in which the taxing entities could succeed is by prevailing under 11 U.S.C. § 506(c) so that the real estate taxes can be chargeable against the fund encumbered by the Bank.

11 U.S.C. § 506(c) states as follows:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

■ 11 U.S.C. § 506(c) does give statutory authority to a Bankruptcy Trustee to recover the costs of preserving property so long as those expenses benefit the secured creditor. Moreover, our Circuit has held that a creditor, in lieu of the trustee, can initiate this action under Section 506(c) against a secured creditor. *In re McKeesport Steel Castings Co.,* 799 F.2d 91 (3rd Cir.1986).

■ We conclude, therefore, that to the extent of any benefit to the Bank, the taxes, if found to be reasonable and necessary to preserving the property, should be paid from the escrowed fund.

This Court must determine whether real estate taxes represent reasonable and necessary expenses which benefit the secured

creditor. The Courts have answered this question in conflicting ways.

In the case of *In re Parr Meadows Racing Association, Inc.,* 92 B.R. 30 (E.D.N.Y.1988), *aff'd, in part, rev'd, in part,* 880 F.2d 1540 (1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990), the Court reviewed the various Sections of the Bankruptcy Code dealing with the payment of taxes i.e., Sections 502(i), 503(b)(1) and 507(a)(7), and concluded that Congress addressed post-petition taxes in such a way as to preclude their inclusion as Section 506(c) expenses. The New York District Court further concluded that property taxes used, in part, to fund "local fire, police, and road maintenance departments" represented an indirect benefit which was "... insufficient to bring these post-petition property taxes within the scope of § 506(c)". *Id.* at pg. 36. The Court further observed that "Monies a government entity derives from the collection of real property taxes fund many governmental operations and services which are not directly related to preservation and disposal of the asset and in no way provide a benefit to the secured creditor. Real estate tax revenues support public parks, libraries, schools, and social services, which do not constitute expenses peculiarly connected with preserving or disposing of the parcel of land". *Id.* at p. 36.

In contrast to *In re Parr Meadows Racing Association, Inc.,* we direct the parties attention to *United Jersey Bank v. Miller,* 159 B.R. 148 (E.D.Pa.1993) which upheld a Bankruptcy Court's determination that the following facts justify a finding that the real estate taxes qualified under Section 506(c).

The City's taxes and water and sewer rents are costs which necessarily accrued against the Property during the period that it was marketed for sale. As a result of this marketing, the Property has been sold for an amount which will result in payment of certain net proceeds to UJB. These facts alone establish that UJB was conferred with a benefit by the delays effected by the sale process, which also caused the taxes to accrue. Hence, UJB received a direct benefit from the sale of the Property, which necessarily resulted in

the accrual of these taxes and water and sewer rents while the Property was marketed, and is obliged to compensate the City for same out of the net sale proceeds payable to it. *Id.*, at p. 151.

An excellent analysis as to the issues generated in assessing the estate for post-petition taxes is set forth in *Peter E. Meltzer, Pouring Salt On The Wound: Should An Undersecured Creditor's Distribution Be Reduced By Post–Petition Real Estate Taxes?, 96 Commercial Law Journal 373, 395 (1991).* In an interesting observation, the author of that article points out, by way of example, that in Burlington County, New Jersey, an average of· fifty-eight percent (58%) of real estate taxes is attributable to assessments for the benefit of schools and libraries which do not appear to have any real benefit to secured creditors.

Since the cases under the Bankruptcy Code do not appear to agree as to how Section 506(c) should apply vis-a-vis real estate taxes, and mindful that Congress "does not write on a clean slate", *Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), pre-Code law was examined to determine whether any change was affected by the statute.

Pre-existing law was, in fact, similar to the codified Section. "A sale of the property free of liens may undoubtedly be ordered, but, if this is done, the proceeds must be applied to their (lienholder's) satisfaction, undiminished by anything except the costs of sale, or the expenses, if any, which have been undertaken for, and result to, their benefit. They are not concerned with the bankruptcy proceedings outside of this, and cannot, therefore, be charged with the cost of instituting them or carrying them on." *Prince & Walter,* 131 F. 546 (D.C.M.D.Pa.1904).

The *Prince & Walter* case is important to our analysis since, in that case, the Bankruptcy Trustee created a fund of One Thousand One Hundred Fifty Dollars ($1,150.00) from the sale of personal property and One Thousand Four Hundred Fifty Dollars ($1,450.00) from the sale of real estate. The question before the U.S. District Court for the Middle District of Pennsylvania was how that money should be distributed. After an-alyzing the issue under the Bankruptcy Act, the Court concluded that real estate taxes that do not represent liens against the property should be borne by the general revenues of the estate rather than the proceeds of the sale of real estate which was sold free and clear of liens with the liens to attach to the proceeds.

It is important to note that the Court in that case considered taxes, insurance, expenses incurred in maintaining a liquor license, and various advertising costs and concluded that the latter three were necessary in preserving the estate and beneficial to the secured creditor while discounting the assessment of real estate taxes against the fund secured by the creditor.

■ This is not to say that· real estate taxes incurred after the bankruptcy filing should not be borne by the fund created from the sale of secured property. What this Court does recognize is that the burden of proving that post-petition real estate taxes are reasonable, necessary expenses that benefit the secured creditor is on the party arguing that position. *In re Jenson,* 980 F.2d 1254, 1260 (9th Cir.1992); *In re Appliance Store, Inc.,* 158 B.R. 384, 389 (Bkrtcy. W.D.Pa.1993); and *In re Mechanical Maintenance,* 128 B.R. 382 (Bkrtcy.E.D.Pa.1991).

■ The record before us reveals no such attempt to establish that point and, accordingly, this Court is compelled to grant the Motion of the Bank and order that the escrow fund be turned over to it.

Attached is the Order of this Court.

### ORDER

**IT IS HEREBY ORDERED** that the Motion of New Brunswick Savings Bank is granted. The Trustee is directed to cause the turnover of the escrowed fund identified in the Motion to New Brunswick Savings Bank free of the claim of the taxing authorities.