In re GLASPLY MARINE
INDUSTRIES, INC.,
Debtor.

TREASURER OF SNOHOMISH
COUNTY, WASHINGTON,
Appellant,

v.

SEATTLE–FIRST NATIONAL
BANK, Appellee.

No. 91–35467.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1992.

Decided July 30, 1992.

392

Carol J. Weibel, Deputy Pros. Atty., Everett, Wash., for appellant.

Joseph D. Weinstein, Davis, Wright & Tremaine, Seattle, Wash., for appellee.

John V. Staffan, Deputy Pros. Atty., Yakima, Wash., for amicus.

Before: FARRIS, NORRIS and KOZINSKI, Circuit Judges.

FARRIS, Circuit Judge:

Snohomish County appeals the bankruptcy court's denial of its request for property tax payment from the proceeds of the debtor's liquidation sale. Snohomish County argues that its property taxes should be granted first priority because: 1) the order approving the boat property sale authorized payment; 2) 11 U.S.C. § 506(c) requires payment of all reasonable and necessary costs to preserve property, including county taxes; and 3) it qualifies for an exception to the automatic stay pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b). We affirm.

## FACTS

On October 10, 1986, Glasply Marine Industries, Inc., filed for Chapter 11 relief under the Bankruptcy Code. Its primary asset was a boat manufacturing facility in Marysville, Washington. Seattle–First National Bank had a mortgage on the property in excess of $2,100,000. Bankruptcy Judge Steiner approved the sale of Glasply Marine's boat property on January 6, 1989. On July 31st, the deal closed for $1,600,000.

When Glasply Marine filed its bankruptcy petition, it had not paid Snohomish County real estate taxes for 1986 and 1987. In addition, during bankruptcy, taxes for 1988 and the first half of 1989 were not paid. Seafirst later paid Snohomish County principal and interest for 1986 and 1987 property taxes, but it did not pay the 1988 and 1989 taxes or tax penalties for 1986–1989.

Snohomish County moved the bankruptcy court for payment on January 13, 1990. The court denied the motion, holding that property taxes, interest, and penalties that accrue after the filing of a bankruptcy petition are barred by the automatic stay and therefore did not have priority over Seafirst's mortgage. On February 19, 1991, the district court affirmed. This appeal followed.

## DISCUSSION

### I. *The Sale Order*

■ The bankruptcy court's order authorizing the sale of the boat property provided:

> that the proceeds of the sale at closing shall first be applied to costs of closing, transfer taxes, first position Real Property tax liens, other municipal liens and assessments against the property; and the balance to Seattle–First National Bank to be applied against the Debtor's obligations secured by the Real Property, and the balance, if any, to be distributed to other lien holders ...

Snohomish County argues that its property taxes constituted municipal assessments and were entitled to a priority lien position under the provisions of the order. Judge Steiner held that the property taxes were not "other municipal liens and assessments against the property" because: 1) the order distinguishes between real property tax liens and municipal assessments; and 2) "municipal assessments" refers only to public works assessments.

We review judicial interpretation of orders *de novo*. See *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989). If the order had required payment of *all* past due property taxes first, it would not have specifically listed "first position real property tax liens." Refusal to include property taxes that had not yet attached on the filing date in the term "other municipal liens and assessments" was not error.

### II. *Section 506(c)*

■ Snohomish County asserts that its property taxes should be paid because they are part of "the reasonable, necessary costs of preserving or disposing of" the estate. 11 U.S.C. § 506(c). Section 506(c) allows a trustee to recover reasonable expenses of preserving property "to the extent of any benefit to the holder of [a secured] claim." These expenses must be paid before other claims. To recover expenses under section 506(c), the claimant must show that the incurred expenses were: 1) reasonable; 2) necessary; and 3) beneficial to a secured creditor. *See In re*

*James E. O'Connell Co., Inc.*, 893 F.2d 1072, 1074 (9th Cir.1990). Further, to satisfy the benefits prong, Snohomish County "must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987).

Snohomish County cannot meet this burden. Even the small fraction of property taxes supplying fire protection fails the benefits prong because it does not "directly" protect and preserve the collateral. *See id.* The incidental benefits derived by Seafirst from paying property taxes do not trigger section 506(c). *See id.* (hypothetical benefits do not trigger section 506(c)). *See also In re P.C., Ltd.*, 929 F.2d 203, 206 (5th Cir.1991) ("The benefits of § 506(c) to administrative creditors are severely limited.").

### III. *Exception to the Automatic Stay*

■ Snohomish County argues that the automatic stay violates federal law subjecting federal authorities to state and local taxes. *See* 28 U.S.C. §§ 959–960. Its theory is that, but for the automatic stay, it would have an enforceable lien against the Glasply Marine property. Nothing in the two statutes suggests, however, that postpetition property taxes should receive a *first* priority position. In bankruptcy, taxes are deemed an administrative expense, and are entitled to payment before several classes of claims. *See* 11 U.S.C. §§ 503(b)(1)(B) and 507(a)(1). Congress has chosen to give secured claims priority in bankruptcy over taxes, including property taxes. Excess proceeds from an asset sale remain subject to overdue property taxes. Sections 959 and 960 do not dictate a different result.

■ Snohomish County also argues that its property tax interest warrants an exception to the automatic stay and must be paid first out of the sale proceeds. The automatic stay bars "any act to create, perfect, or enforce any lien against property of the estate...." 11 U.S.C. § 362(a)(4). It applies to "all entities," including governmental units. *See* 11 U.S.C. §§ 101(15)

and (27). If a creditor possesses a prepetition interest in property, however, and state law establishes a time period for perfection of a lien based on that interest, the creditor may still perfect the lien post-petition. *See* 11 U.S.C. §§ 362(b)(3) and 546(b). The question is whether Snohomish County's interest in the Glasply Marine property constitutes a pre-petition interest that is later perfectible under Washington law.

Washington's real property tax statute provides that:

All taxes and levies which may hereafter be lawfully imposed or assessed shall be and they are hereby declared to be a lien respectively upon the real and personal property upon which they may hereafter be imposed or assessed.... The said lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real and personal property may become charged or liable.

Wash.Rev.Code § 84.60.010. Each county determines an aggregate county levy amount during its October session. *See* Wash.Rev.Code § 84.52.030. Property taxes for the levy year become an attachable lien on the prior January 1st. *See* Wash. Rev.Code § 84.60.020. Glasply Marine filed for bankruptcy in 1986. The property taxes for 1988 and 1989 could not have become liens on the property pre-petition.

Snohomish County contends that Washington law creating the property tax *lien* post-petition merely perfected Washington's preexisting *interest* in collecting its tax revenue, an interest that dates back to formation of the state. The County's theory is that Washington law and the grant of taxation from the Washington Constitution constitute an "ever-present" interest in real property that triggers section 546(b)'s automatic stay exclusion. We reject the argument.

■ Congress designed the automatic stay to protect the relative position of all creditors. *See In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988). Both public and private creditors are subject to the stay. We interpret statutory exceptions, includ-

ing section 546(b), narrowly to further the purpose of the automatic stay. *See id.* at 552. That purpose—to ensure that all creditors are treated fairly and equally— would be severely undermined by a super-priority lien granted each year when counties assess property taxes. Snohomish County's request for an automatic first priority tax lien is irreconcilable with the purpose of section 362. Further, granting the county's request for an automatic first priority tax lien would circumvent Congress' decision to give secured creditors priority over taxes assessed in bankruptcy. *See* §§ 503(b)(1), 507(a)(1).

*Maryland Nat'l Bank v. Mayor & City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983) is distinguishable because Maryland law required a trustee to *first* apply the proceeds of the sale to back taxes, even if the taxes had not yet become due and payable. *See id.* at 1142. In contrast, Washington's statute provides that the tax interest *first* attaches as a lien on January 1st of the tax levy year. *See* Wash.Rev. Code § 84.60.020. Snohomish County cannot assert an ever-present taxable interest in county property. *See Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 86 (3rd Cir.1989) (declining to find any state interest cognizable for purposes of section 546 existing as of the date of bankruptcy); *In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540, 1547 (2d Cir. 1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (same).

Further, the three circuit decisions since *Maryland Nat'l* have explicitly rejected the ever-present interest argument for future property taxes. *See Makoroff v. City of Lockport, N.Y.*, 916 F.2d 890, 897 (3rd Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *Equibank*, 884 F.2d at 84–86; *Parr Meadows*, 880 F.2d at 1544–46. In each decision, the state property tax statutes failed to establish a present interest sufficient to trigger section 546(b). As the Second Circuit observed:

Instead of interpreting § 546(b) as a one-time exception for the creditor who gave value but has not yet perfected its lien, the county would have us create a rotat-

ing exception, which, every [year], would add another lien at the front of the priority line, enabling the county to effectively collect on all its claims as if no bankruptcy petition had ever been filed. Such an interpretation would effectively remove the taxing arms of local government from the controlling provisions of the bankruptcy code, a result clearly contrary to the intent of congress.

*Parr Meadows*, 880 F.2d at 1547. The Third Circuit further stated: .

Although the City and County may have an ever-present expectation of collecting taxes on all property within their jurisdiction, they do not have a property interest in a particular piece of real estate until they take the affirmative acts necessary to fix the amount of the tax due and to acquire a lien to the extent of that amount.

*Makoroff,* 916 F.2d at 894. Washington law requires several affirmative acts to determine the property tax and attach a lien. Snohomish County cannot establish that the 1988 and 1989 taxes constitute an exception to the automatic stay.

Outside of limited exceptions, Congress has given the bankruptcy courts the authority to manage the reorganization or liquidation of a debtor's estate. To adopt the position of Snohomish County would be to grant a continuing exemption to the automatic stay for future property tax interests. It would permit local governments to "pull out chunks of an estate from the reorganization court and ... [would] seriously impair the power of the court to administer the estate." *Gardner v. New Jersey*, 329 U.S. 565, 577, 67 S.Ct. 467, 473, 91 L.Ed. 504 (1947). The automatic stay applies to the 1988 and 1989 property taxes.

AFFIRMED.