In re **CAROLINA TRIANGLE LIMITED PARTNERSHIP**, Debtor.

**INVESTORS OF THE TRIANGLE,**
Appellant,

v.

**CAROLINA TRIANGLE LIMITED PARTNERSHIP,** Appellee.

BAP No. AZ–93–1410–RJH.
Bankruptcy No. 89–02340–TUC–LO.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 24, 1994.

Decided April 28, 1994.

Steven M. Cox, Tucson, AZ, for appellant.

Betty J. Cather, Tucson, AZ, for debtor/appellee.

Before RUSSELL, JONES and HAGAN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The Debtor's Chapter 11[1] plan was confirmed by the bankruptcy court which provided that all real property taxes would become a lien upon the real property and no administrative claim against the Debtor. The secured creditor appealed the order confirming the plan. We AFFIRM.

## I. FACTS

On August 25, 1989, the appellee, Carolina Triangle Limited Partnership ("Triangle"), filed a Chapter 11 petition. Triangle was a limited partnership organized under the laws of the state of Washington for the purpose of acquiring 179.9 acres of vacant real property ("property") located in Wake and Durham counties, North Carolina.

The appellant, Investors of the Triangle ("Investor"), is a limited partnership organized under the laws of the state of North

---

**1.** Unless otherwise indicated, all chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

Carolina and was the holder of a purchase money promissory note secured by a first deed of trust.

On April 1, 1991, Investor and Triangle entered into a stipulation. That stipulation provided for payment of Investor's claim, set a deadline for filing and obtaining approval of the disclosure statement and plan of reorganization, under certain conditions, including payment by Triangle of all real property taxes due and owing. The stipulation also provided that if Triangle failed to meet any of the deadlines for filing and confirming a plan of reorganization by July 29, 1991, the automatic stay would automatically be terminated by the filing of a declaration evidencing the default. The stipulation was approved on June 18, 1991.

On April 16, 1991, Triangle filed a disclosure statement and a first plan of reorganization. The disclosure statement was approved by the bankruptcy court on June 4, 1991. On July 23, 1991, Investor filed an objection to Triangle's plan, because the plan did not incorporate the stipulation.

A confirmation hearing was held on July 30, 1991. At that hearing the bankruptcy court was advised by counsel for Triangle that only 18 of the 75 limited partners had responded to vote and that Triangle seriously lacked support to proceed to confirmation. Based upon that evidence the confirmation was denied.

On September 17, 1991, counsel for Investor filed his declaration evidencing the default by Triangle. On that same date, Investor also filed a motion for relief from the automatic stay. The court entered an order granting the motion on October 27, 1991.

On January 30, 1992, Triangle filed a second plan of reorganization and disclosure statement. The disclosure statement was approved by the bankruptcy court on March 24, 1992. On May 5, 1992, Investor filed an objection to Triangle's plan because the plan did not provide for the full payment of all real property taxes as allegedly agreed upon in the stipulation. Instead, the plan provided that the real property tax assessments would attach to the land upon confirmation of the plan. However, there was no evidence of the nature and amount of any real property taxes owing.

A confirmation hearing was held on May 12, 1992. The matter was submitted and the bankruptcy court subsequently issued a minute order confirming the plan on June 29, 1992.

On July 8, 1992, Investor filed a motion for reconsideration of the order confirming the plan, arguing that Triangle's plan could not be confirmed without the plan containing a provision providing for the payment of the real property taxes in accordance with the stipulation. Again no admissible evidence was submitted as to what, if any, real property taxes were owing. On September 26, 1992, a hearing was held, at which time the motion was submitted.

While the motion was still under submission, Triangle filed an application to abandon the property. The court entered an order approving the abandonment on November 24, 1992.

On March 8, 1993, the bankruptcy court issued an order denying Investor's motion for reconsideration. The bankruptcy court stated that the stipulation was not binding since the first plan of reorganization was not confirmed and the bankruptcy court was presented with no evidence concerning the period for which the real property taxes were owing.

On March 11, 1993, Investor filed a motion for reconsideration of the March 8, 1993 order. Essentially, Investor was seeking to clarify the issue of whether the real property taxes should have been paid by Triangle, since it owned the property prior to the abandonment. Investor provided the court with copies of delinquent tax statements purporting to prove that the taxes were incurred by Triangle. On March 23, 1993, the Court entered an order stating that the motion was denied since the evidence of the delinquent tax statements was not newly discovered evidence since the evidence had clearly been available prior to the original objection to the plan.

On March 18, 1993, Investor filed a motion to extend the time for appeal. On March 21, 1993, the court granted an extension until

April 7, 1993. On April 2, 1993, Investor timely filed its notice of appeal from the confirmation order and denial of reconsideration.

On that date, Investor filed a motion for a stay pending appeal. On April 5, 1993, Triangle filed a response to the motion for a stay pending appeal. The bankruptcy court granted the motion for stay pending appeal. The bankruptcy court's order provided that Triangle was stayed from distributing the sum of $29,000 under the plan, and that Investor must post a bond of $15,000, to remain in effect until final disposition of this appeal. A bond was posted by Investor on June 4, 1993.

## II. ISSUES

A. Whether the appellant has timely perfected its appeal by filing a notice of appeal within the statutory time limits under Rule 8002.

B. Whether there was sufficient evidence presented by Investor to prevent confirmation of Triangle's plan.

C. Whether the bankruptcy court erred in confirming the debtor's plan of reorganization over Investor's objection that the stipulation between the parties was binding and that the real property taxes were an administrative expense.

## III. STANDARD OF REVIEW

█ An order confirming a plan of reorganization is a conclusion of law subject to *de novo* review. *In re Camino Real Landscape Maintenance Contractors*, 818 F.2d 1503,

1505 (9th Cir.1987). The existence of subject matter jurisdiction is a question of law reviewed *de novo*. *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir.1992). *De novo* means considering the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. C.I.R.*, 954 F.2d 1495, 1497 (9th Cir.1992) (citing *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988)).

## IV. DISCUSSION

A. *Timeliness of Appeal*

█ Triangle has asserted that this appeal is not timely, so as to deprive this Panel of any subject matter jurisdiction. Simply stated, Triangle believes that the motion for reconsideration was filed pursuant to Rule 9024. Rule 9024 is similar to Fed.R.Civ.P. 60[2] and a Rule 60 motion does not extend the time for filing a notice of appeal. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir.1983).

Investor claims that the motion for reconsideration was a motion filed pursuant to Rule 9023. We agree. Rule 9023 is similar to Fed.R.Civ.P. 59.[3]

The Supreme Court has held that a post-judgment motion will be considered a Rule 59(e) motion where it involves " 'reconsideration of matters properly encompassed in a decision on the merits.' " *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 990, 103 L.Ed.2d 146 (1989) (quoting *White v. New Hampshire Dept. of Employment Secu-*

---

**2.** Rule 60(b) provides in part:

(b) **Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.

**3.** Rule 59 provides in part:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity.... On a motion for a new trial ... the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

....

(e) **Motion to Alter or Amend a Judgment.** A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

*rity,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982)).

The Ninth Circuit has held that a post-judgment motion that could have been brought under Rule 59(e) is properly construed as a Rule 59(e) motion, if brought within ten days of judgment. *United States v. Nutri–Cology, Inc.,* 982 F.2d 394, 397 (9th Cir.1992); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 585–86 (9th Cir.1993) (timeliness of Rule 59(e) motion for reconsideration measured from date of service), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

In this case, Investor filed the motion for reconsideration based upon the bankruptcy court's order stating that Investor did not submit any evidence to show that the real property taxes were delinquent. The motion for reconsideration was filed to show that Investor did indeed submit evidence proving the real property taxes were delinquent. This clearly involves matters encompassing the decision on the merits, namely the issue of whether the real property taxes should be an administrative expense or attach to the property itself. In addition, the motion for reconsideration was filed within three days of the March 8, 1993 bankruptcy court order.

We hold that the motion for reconsideration was a Rule 59(e) motion and as such, the time to file the notice of appeal did not begin until the entry of the order denying the motion for reconsideration. Rule 8002(b). The order denying the motion for reconsideration was entered on March 23, 1993. On April 2, 1993, Investor filed its notice of appeal within the ten-day period prescribed by Rule 8002(a). Thus, Investor did timely perfect this appeal even without the extension granted on March 21, 1993.

B. *Sufficiency of the Evidence Relating to Investor's Objection to the Plan*

■ As previously stated, it appears that Investor did not present sufficient evidence in support of its objection to Triangle's plan. More specifically, Investor's March 5, 1992 objection lacked any evidence of the nature and amount of any real property taxes owing. On July 8, 1992, Investor filed a motion for reconsideration; however, no admissible evidence as to what real property taxes were owing, if any, was submitted with the motion.

On March 8, 1993, the bankruptcy court issued an unpublished opinion denying Triangle's motion for reconsideration stating:

> This court confirmed the Debtor's Plan because there was no evidence on the record that these post-petition taxes were taxes corresponding to the time the Debtor had possession of the property.
>
> . . . .
>
> Investors at no time during the contested confirmation hearing asked this Court to be allowed to supplement the record or to have the matter deemed submitted after a submission of an affidavit, declaration or copy of the delinquent tax records.
>
> This Court notes that gathering information on real estate taxes is not extremely difficult,
>
> Furthermore, even when this Court took the matter under advisement for over a month Investors still never came forth to supplement the record.

On March 11, 1993, Investors filed another motion for reconsideration, attempting to prove that the taxes were owing. On March 23, 1993, the bankruptcy court denied the motion stating that the evidence of the tax statements was not newly discovered evidence since the evidence clearly had been available prior to the original objection to the plan. We agree.

C. *Confirmation of Debtor's Plan*

■ The crux of this appeal appears to center on who should bear the responsibility of paying the real property taxes. Triangle argues that the property stands alone as the source of payment of the taxes. Under North Carolina law the taxes have been or certainly will become a lien on the property due to the property being abandoned and the automatic stay consequently being lifted. When Investor forecloses on the property it will take subject to the taxes.

Investor believes that Triangle is responsible, claiming that the taxes are an administrative expense. In effect, Investor wants the unsecured creditor of Triangle's estate to pay the real property taxes.

The stipulation dated April 1, 1991, provides:

4. In consideration of this Stipulation, Debtor agrees and promises to file a Plan of Reorganization and Disclosure Statement in this case within thirty (30) days from the date of this Stipulation, to obtain Bankruptcy Court approval of the Disclosure Statement within 75 days from the date of this Stipulation, and to obtain confirmation of Debtor's Plan of Reorganization, which fully adopts this Stipulation, within 120 days from the date of this Stipulation. In the event that Debtor fails to meet these deadlines without good cause, then the bankruptcy stay shall be automatically terminated as to the Property for the benefit of Investors, without further notice of hearing, upon the filing of a declaration on behalf of Investors stating the default and proclaiming that stay relief pursuant to this paragraph of this Stipulation is effective as of the date of the declaration.

5. Debtor agrees that all real property taxes shall be paid current by the Debtor on or before the effective date of Debtor's Plan of Reorganization in this case, and that all subsequent real property taxes coming due against the Property in subsequent years through 1995 will be paid timely and in full by Debtor, in accordance with applicable State law.

The stipulation required Triangle to obtain confirmation of its plan within 120 days from the date of the stipulation. When the bankruptcy court denied the confirmation of Triangle's plan, the stipulation became unenforceable.

More specifically, the bankruptcy court held:

Therefore, if this Court had confirmed the plan at the July 30, 1991 hearing the Debtor would have had to pay all real property taxes. However, this Court on July 30, 1991 denied confirmation of Debtor's first plan filed on April 15, 1991.

### 1. Postpetition Real Property Taxes as an Administrative Expense

We begin by noting that the taxing authorities are not parties to this appeal.[4] Investor argues that the real property taxes are an administrative expense. This would have the effect of requiring the unsecured creditors to pay the real property taxes.

Section 503(b)(1)(B)(i) provides in pertinent part that "after notice and a hearing, there shall be allowed administrative expenses, including, ... any tax—incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title....;" Section 507(a)(7) does not address postpetition real property taxes, despite specifically addressing prepetition real property taxes.[5]

 The real issue before this Panel is whether the real property taxes were "incurred" by the estate.[6] Under North Car-

4. It is unclear who would have standing except the taxing authority to have its claim allowed as an administrative expense. Section 503(a) ambiguously states that an entity may file a request for payment of an administrative expense. An "entity" under the Code includes person, estate, trust, governmental unit, and United States Trustee. § 101(15). Since this issue is not necessary to our decision, we leave this issue open for another day.

5. Section 507(a)(7)(B) allows unsecured claims of governmental units, only to the extent that such claims are for a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

6. It appears that § 502(b)(3) should limit a real property tax claim as an administrative expense, if such claim exceeds the value of the interest of the estate in such property; i.e. profits from sale of property or equity. But the property taxes on vacant land which has been abandoned, as in this case, will not provide a source of payment for the taxes. In the cases cited by Investor, the property provided the funds necessary to pay the taxes. See In re Trowbridge, 74 B.R. 484 (Bankr. E.D.Pa.1987); In re Erie Hilton Joint Venture, 125 B.R. 140 (Bankr.W.D.Pa.1991), reh'g refused, 157 B.R. 244 (1993).

In Trowbridge, the estate was prepared to return real estate to the debtor after all claims had been paid in full. The debtor and the trustee were in dispute as to who would pay the real property taxes on the returned real estate. The court held that the taxes were entitled to be an administrative expense. Ironically, the debtor won the battle but lost the war. The trustee was required to sell the returned real estate in order to pay off the tax lien. Thus there was sufficient equity in the real estate to pay the taxes. Id. 74 B.R. at 486 n. 3.

In Erie Hilton, the estate was operating a hotel located on the real property. Thus, the estate

olina law, liens for real property taxes owed attach in *rem* and not in *personam*. *See* N.C.Gen.Stat. § 105–355(a) (1992).

 Prior to the property being abandoned, the automatic stay under § 362 prevented the lien from attaching to the property. *See In re Glasply Marine Industries, Inc.*, 971 F.2d 391 (9th Cir.1992). Under § 502(b)(3), a prepetition claim shall be allowed except to the extent that "if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property . . . ;"

The Ninth Circuit has recently held:

Congress has chosen to give secured claims priority in bankruptcy over taxes, including property taxes. *Excess proceeds from an asset sale remain subject to overdue property taxes.* (emphasis added)

*Glasply Marine*, 971 F.2d at 394.

It is therefore clear that Congress intended that any liability for payment of real property taxes may not exceed the value of the property to the estate.

Here, there are no excess proceeds since the property was abandoned by the bankruptcy estate. The property is of no value to the estate, since it has abandoned all interest in the property. Therefore, the estate has not "incurred" the real property taxes, and as such the taxes are not entitled to an administrative expense priority because only the property is subject to the tax liability.

Assuming *arguendo* that the real property taxes were incurred by the estate, the administrative expense could not exceed the estate's equity in the property. To hold the taxes to be administrative expense would be a windfall to the secured creditor, since the unsecured creditor would pay the taxes, thus allowing the secured creditor to sell the property free of the North Carolina's first priority tax lien.

We hold that the real property taxes were not "incurred" by the estate and as such cannot be an administrative expense pursuant to § 503(b).

was being benefited by the income generated from the property which could be used to pay the

## V. CONCLUSION

Investor has timely perfected its appeal within the statutory 10 day time period under Rule 8002. The bankruptcy court did not err in confirming Triangle's plan since the stipulation between the parties was unenforceable, and the bankruptcy court was not presented with any admissible evidence regarding real property taxes owing. In addition, the stay pending appeal is lifted. Accordingly, we AFFIRM.