

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-1994

# C.S. Associates v. Miller

Precedential or Non-Precedential:

Docket 93-1961

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"C.S. Associates v. Miller" (1994). *1994 Decisions.* Paper 86.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/86

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-1961



C.S. ASSOCIATES, d/b/a UNIVERSITY NURSING
AND REHABILITATION CENTER

UNITED JERSEY BANK,

                              Appellant,

                    v.


MITCHELL W. MILLER, ESQ.; THE CITY OF PHILADELPHIA;
THE UNITED STATES OF AMERICA; HEALTHCARE SERVICES
GROUP; PERLOFF BROTHERS, INC.; DIANE VENDETTI;
THE SCHOOL DISTRICT OF PHILADELPHIA; NICHOLAS CANUSO, DR.;
RAYMOND SILK, DR. and EUGENE SPITZ, DR.

                         MITCHELL W. MILLER, ESQ.,
                                        Trustee

                         FREDERICK J. BAKER, ESQ.,
                                        Trustee



On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 93-cv-03065)



Argued May 24, 1994

Before:  COWEN and ROTH, <u>Circuit Judges</u>, and
         ACKERMAN, <u>District Judge</u>.[1]

(Filed July 20, 1994)

---

[1]The Honorable Harold A. Ackerman, United States District Judge
for the District of New Jersey, sitting by designation.


1

John J. Francis, Jr. (argued)
Shanley & Fisher, P.C.
131 Madison Avenue
Morristown, NJ  07962-1979

       Counsel for Appellant
       United Jersey Bank


Joseph DiGiuseppe (argued)
Assistant City Solicitor
City of Philadelphia Law Department
1101 Market Street, 10th Floor
Philadelphia, PA  19107-2997

       Counsel for Appellee
       City of Philadelphia


Edward J. DiDonato
Ciardi & DiDonato, P.C.
1900 Spruce Street
Philadelphia, PA  19103

       Counsel for Appellee
       Mitchell W. Miller, Esq.,
       Bankruptcy Trustee of the Estate
       C.S. Associates

**OPINION OF THE COURT**


COWEN, <u>Circuit Judge</u>.


In this bankruptcy case, the bankruptcy court granted a motion by the City of Philadelphia ("the City") to recover unsecured post-petition real estate taxes and water/sewer rents from the secured creditor, United Jersey Bank ("UJB"), pursuant to 11 U.S.C. § 506(c).  The district court affirmed the order of the bankruptcy court.  Because the City did not demonstrate that

the taxes conferred a direct benefit to the creditor whose claim the property secures, we will reverse the order of the district court.

## I. BACKGROUND

C.S. Associates, d/b/a University Nursing and Rehabilitation Center, the debtor in this case, owned and operated a skilled care nursing home in Philadelphia. UJB is the Indenture Trustee under a Trust Indenture agreement entered into with the Philadelphia Authority for Industrial Development ("PAID") in order to finance the acquisition, construction and equipping of the nursing home facility. C.S. Associates entered into an installment sale agreement with PAID on February 16, 1983. To provide the necessary funds with which to finance the acquisition, construction and completion of the facility, PAID authorized and issued bonds ("1983 Bonds") in the aggregate principal amount of $6,870,000. The 1983 Bonds were issued under and are secured by the Indenture entered into by and between PAID and UJB as Indenture Trustee on February 16, 1983. Pursuant to the terms of the Indenture, PAID assigned all of its rights, its title and its interest under the installment sale agreement and all monies payable thereunder to UJB as Indenture Trustee for the benefit of the holders of the 1983 Bonds.

To secure the repayment of the 1983 Bonds, C.S. Associates granted to PAID a first priority mortgage on the facility and real property constituting the site of the facility. There is currently due and owing from C.S. Associates to UJB as

3

Indenture Trustee the principal amount of $3,367,037.47 plus interest and fees, which amount is secured by the mortgage. Thus, UJB is a secured creditor of C.S Associates.

On August 15, 1988, C.S. Associates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, C.S. Associates failed to provide adequate services to its patients and on October 28, 1988, the facility was closed by the Department of Health of the Commonwealth of Pennsylvania. C.S. Associates' unsecured creditors' committee presented a plan of reorganization which called for the sale of the facility; however, this effort failed because, prior to the confirmation of the plan, the facility was repeatedly and severely vandalized from late September through December, 1989. On April 18, 1990, pursuant to a motion filed by the United States Trustee, the bankruptcy court ordered the debtor's case converted to a case under Chapter 7 of the Bankruptcy Code. Thereafter, Mitchell W. Miller was appointed Chapter 7 Trustee for the debtor.

During the pendency of C.S. Associates' Chapter 7 proceeding, the City of Philadelphia filed two proofs of claim for post-petition administrative real estate taxes and water/sewer rents, totalling $548,706.80, which had been assessed against the facility. The City also filed a proof of claim for pre-petition real estate taxes and water/sewer rents, totalling $48,803.46, which under the applicable state law had properly become liens against the facility.

By order dated November 10, 1992, the bankruptcy court approved the sale of the facility for $2,416,000, free and clear

4

of all liens and encumbrances.  UJB thereafter filed an action with the bankruptcy court to predetermine the extent, validity, and respective priority of any and all liens on the facility and, accordingly, on the proceeds of the approved sale.  The City maintained that both its pre-petition and post-petition real estate taxes and water/sewer rents had priority over UJB's secured claim.

The bankruptcy court, in accordance with our holding in Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 84-85 (3d Cir. 1989), held that the City's pre-petition liens had priority over UJB's secured claim as to the sale proceeds. However, the bankruptcy court held that the City's post-petition real estate taxes and water/sewer rents did not have priority over UJB's secured claim as to the sale proceeds.  The bankruptcy court went on to suggest that the City might be able to recover its post-petition real estate taxes and water/sewer rents from the sale proceeds pursuant to either 11 U.S.C. § 503(b)(1)(B)(i) or 11 U.S.C. § 506(c).

Accordingly, on March 12, 1993, the City moved the bankruptcy court, pursuant to 11 U.S.C. § 506(c), to surcharge the sale proceeds and allow the City to recover its post-petition real estate tax claims and its water/sewer rent claims.  In the order of the bankruptcy court which is at issue in this appeal, the bankruptcy court granted the City's motion under § 506(c) to obtain compensation for post-petition real estate taxes and water/sewer rents in the stipulated amount of $548,706.80.

UJB appealed the disputed bankruptcy court order to the district court, arguing that the City had not met the requirements of § 506(c) with respect to the post-petition real estate taxes and water/sewer rents. The district court affirmed the bankruptcy court's order. UJB took this appeal. We have jurisdiction under 28 U.S.C. § 158(d).

## II. DISCUSSION

UJB argues before us that the district court and bankruptcy court erred in holding that the City had met the requirements of 11 U.S.C. § 506(c) and could recover post-petition real estate taxes and water/sewer rents under that section. "Because the district court sits as an appellate court in bankruptcy cases, our review of the district court's decision is plenary. This [c]ourt's standard of review is clearly erroneous as to findings of fact by the bankruptcy court, and plenary as to conclusions of law." In re Stendardo, 991 F.2d 1089, 1094 (3d Cir. 1993) (citation omitted). The issue in this appeal is whether the bankruptcy court and district court correctly interpreted and applied the legal standard contained in § 506(c), and we will therefore exercise plenary review. See Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1203 (3d Cir. 1992).

In Equibank, we held that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(4), "prevents the creation of a lien post-petition." 884 F.2d at 84. The only amounts in question in this appeal are post-petition real estate

6

taxes and water/sewer rents, and therefore the City's taxes and rents have not and cannot attain lien status for purposes of the Bankruptcy Code.  Id. at 84-85.

> The code . . . provides two options for payment of taxes that have not attained lien status as of the date of the entry of the stay.  First, they may be payable by the trustee, either as first priority administrative expenses, see 11 U.S.C. § 503(b)(1)(B)(i), or as seventh priority expenses, 11 U.S.C. § 507(a)(1).  Second, they may be payable by the secured creditor as payment for benefit received, see 11 U.S.C. § 506(c).

Equibank, 884 F.2d at 83.

The parties dispute whether the City could properly receive payment for the real estate taxes and water/sewer rents pursuant to the second option.  Section 506(c) of the Bankruptcy Code provides that:  "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."  11 U.S.C. §506(c).  Our decisions have clarified that to recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditors.  Equibank, 884 F.2d at 84, 86-87; In re McKeesport Steel Castings Co., 799 F.2d 91, 94-95 (3d Cir. 1986); see also In re Glasply Marine Indus., 971 F.2d 391, 394 (9th Cir. 1992) ("[T]o satisfy the benefits prong [of §506(c) the claimant] must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." (internal quotation marks omitted)); In re Flagstaff

7

Foodservice Corp., 762 F.2d 10, 12 (2d Cir. 1985) ("[T]o warrant [§] 506(c) recovery . . . [the claimant] must show that . . . funds were expended primarily for the benefit of the creditor and that the creditor directly benefitted from the expenditure.").

In considering whether the post-petition real estate taxes and water/sewer rents assessed by the City qualified for treatment under § 506(c), the bankruptcy court stated:

> The City's taxes and water and sewer rents are costs which necessarily accrued against the Property during the period that it was marketed for sale. As a result of this marketing, the Property has been sold for an amount which will result in payment of certain net proceeds to UJB. These facts alone establish that UJB was conferred with a benefit by the delays effected by the sale process, which also caused the taxes to accrue. Hence, UJB received a direct benefit from the sale of the Property, which necessarily resulted in the accrual of these taxes and water and sewer rents while the Property was marketed, and is obliged to compensate the City for same out of the net sale proceeds payable to it.

In re C.S. Assocs., No. 88-12842S, slip op. at 2 (Bankr. E.D. Pa. April 22, 1993); app. at 469.

On appeal from the order of the bankruptcy court, the district court held:

> [T]he fact of the accrual of the taxes over the period during which the property was marketed is not open to dispute, nor is the reasonableness of the amount of taxes as assessed pursuant to Pennsylvania statute. Further, the Bankruptcy Court's determination that the fact of the accrual of taxes while the marketing of the property took place was a benefit to the secured creditor represents a permissible inference for the court to have drawn and is supported by the record of the proceedings.

United Jersey Bank v. Miller, No. 93-3065, slip op. at 5 (E.D. Pa. Sept. 9, 1993); app. at 544.

8

As revealed by the language quoted above, the bankruptcy court and the district court operated under the assumption that the general and incidental benefits which an entity receives from municipal services are the type of benefits which § 506(c) contemplates. We find that the bankruptcy court and the district court incorrectly interpreted and applied §506(c) in allowing recovery of the assessed taxes and rents without a demonstration by the City that such taxes and rents caused a direct benefit to UJB, the secured creditor.

Both the bankruptcy court and the district court mistakenly relied on our holding in Equibank, 884 F.2d 80, in reaching their conclusion. In Equibank, we merely stated that real property taxes "may . . . arguably be payable as the secured creditor's liability pursuant to [§] 506(c)." Id. at 86 (emphasis added). Because it was not clear to us what benefit the secured creditor derived from the payment of those taxes, we remanded the case so that the bankruptcy court could make a determination as to whether payment of the taxes provided a direct benefit to the secured creditor. Id. at 86-87.

In this case, the City did not meet the requirement that it demonstrate a direct benefit to the secured creditor. Section 506(c) does not contemplate recovery for costs and/or expenses associated with the incidental benefits an entity may receive by virtue of existing within a municipality which provides general services funded by taxes. This point has been cogently made by a district court:

9

Section 506(c) was not intended to encompass ordinary administrative expenses that are attributable to the general operation and dissolution of an estate in bankruptcy.  Rather, it was designed to extract from a particular asset the cost of preserving or disposing of that asset.  The trustee's payment of real property taxes might benefit . . . the . . . secured creditors to the extent that monies raised from the collection of property taxes are used, in part, to fund the local fire, police, and road maintenance departments, which provide protection to the secured property against vandalism and fire, and ensure that the adjoining road is kept in good condition.  This indirect benefit, however, is insufficient to bring these post-petition property taxes within the scope of § 506(c).

Courts have narrowly construed § 506(c) to encompass only those expenses that are specifically incurred for the express purpose of ensuring that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt and also apportions those costs to the secured creditor who, realistically, is assuming the asset. Although in exchange for the payment of property taxes, the estate would reap benefits that might aid in preserving the asset in the advent of fire or from the threat of vandalism, this incidental benefit is not what was contemplated by § 506(c).  Monies a government entity derives from the collection of real property taxes fund many governmental operations and services which are not directly related to preservation and disposal of the asset and in no way provide a benefit to the secured creditor.  Real estate tax revenues support public parks, libraries, schools, and social services, which do not constitute expenses peculiarly connected with preserving or disposing of the parcel of land.

Moreover, the Bankruptcy Code explicitly sets forth the level of priority to be afforded unsecured tax claims.  Section 503 . . . indicates that tax claims are generally afforded the status of ordinary administrative expenses, thereby receiving first priority after secured claims, unless they are the type of taxes specified in § 507(a)(7), in which case they will receive a seventh ranked priority after secured claims.

10

In re Parr Meadows Racing Ass'n, 92 B.R. 30, 35-36 (E.D.N.Y. 1988) (citations omitted), aff'd in part, rev'd in part on other grounds, 880 F.2d 1540 (2d Cir. 1989). This reasoning is persuasive and we adopt it. Accord In re Glasply, 971 F.2d at 394 ("Even the small fraction of property taxes supplying fire protection fails the benefits prong [of § 506(c)] because it does not 'directly' protect and preserve the collateral. The incidental benefits derived by [the secured creditor] from [the payment of] property taxes do not trigger section 506(c)." (citation omitted)). Accordingly, the incidental benefits which the secured creditor received through general municipal services to the property do not justify recovery by the City under §506(c) for the post-petition real estate taxes and water/sewer rents which accrued as to the subject property.

The City argues that since the debtor retained no equity in the subject property, UJB as the secured creditor received the full benefit from the sale of the property. The City argues that having the property on the market benefitted UJB because it was able to obtain the best available price for the property, and therefore real estate taxes and water/sewer rents which necessarily accrued during that time frame should be recoverable under § 506(c). We reject this argument. Simply because UJB benefitted from the sale of the property does not automatically mean that payment of real estate taxes and water/sewer rents which accrued pending the sale of the property

11

provided any direct benefit to the property in question.[2] As stated above, incidental benefits which an entity receives from general municipal services are not the type of benefit contemplated by § 506(c).

Had the City put forth evidence that the property had received some direct or special governmental service which benefitted the property, our conclusion might be different. For instance, if the City had stationed a police officer at the property to protect it, or if the fire department had provided some direct service at the location, such services might have been quantifiable and might have been recoverable under § 506(c). But in this case, the City, the bankruptcy court and the district court relied on the mere fact that government real estate taxes and water/sewer rents accrued as to the property during the post-petition time frame. This alone does not meet the requirement of § 506(c) that a direct benefit to the secured creditor be demonstrated.

The City asserts that trash removal and road, water and sewer service benefitted the property. However, the City apparently never presented proof in the bankruptcy court that any of these services actually were performed for the direct benefit of the property. More importantly, even assuming that such services were performed for the benefit of the property, the City

---

[2]UJB contends vigorously that it will receive little benefit from the sale of the property, even if it is completed as approved by the bankruptcy court, since the net payment UJB will receive will still leave it, as a secured creditor, with a shortfall of $2,500,000.

12

did not quantify the value of services which were actually performed.  The City had the opportunity to present such proof in the bankruptcy court, but failed to do so.  The City therefore did not meet its burden under § 506(c).

We will reverse the judgment of the district court. The case will be remanded to the district court with a direction that it remand the case to the bankruptcy court with instructions to enter an order denying the motion of the City seeking payment under § 506(c) of post-petition real estate taxes and water/sewer rents from the proceeds of the sale of the subject property.

_____

13